IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID SNODGRASS and
LESLIE SNODGRASS,

      Plaintiffs,

v.                                                     Case No. 18-1231-JWB

CITY OF WICHITA, KANSAS, et al.,

      Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on responses to the court's show cause order (Docs. 43, 44, 45, 46, 47, 48, 49, 50.) On October 17, 2018, this court entered an order to show cause as to why this matter should not be remanded to state court pursuant to the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, or the principle of comity. The matter has been fully briefed. This action is REMANDED to state court for the reasons stated herein.

**I.    Facts and Procedural History**

A notice of removal was filed by Defendant Kutak Rock LLP ("Kutak") which alleges that the court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331. (Doc. 1 at 5.) Plaintiffs filed a class action petition in Sedgwick County, Kansas, bringing both state law claims and claims pursuant to 42 U.S.C. § 1983 against the City of Wichita, members of the Wichita City Council, Kutak, and several other Defendants. (Doc. 1, Exh. A.) With respect to Plaintiffs' claims under section 1983, Plaintiffs allege violations of their Fifth Amendment rights and their Equal Protection rights under the Fourteenth Amendment. Essentially, Plaintiffs allege that the City of Wichita ("the City") issued general obligation and special obligation bonds under Kansas law to finance payment of certain improvements within the Remington Place Addition ("Remington").

1

The City issues general obligation and special obligation municipal bonds under the General Improvement and Assessment Laws of Kansas, K.S.A. § 12-6a01, *et seq*. A governing body of a city is authorized under Kansas law to make improvements that confer a special benefit to a property and then to "levy and collect special assessments upon property in the area deemed by the governing body to be benefited by such improvement…." K.S.A. § 12-6a02. The statute goes on to list the improvements which are allowed, including sewer systems and paving of streets.

In 2003, Plaintiffs purchased property in Remington. Prior to Plaintiff's purchase, Peake, the developer of Remington, petitioned the City "for the financing of street, sewer and water improvements by the issuance of general obligations bonds" under Kansas law. (Doc. 1, Exh. A at 11.) Peake's petition was accepted and general obligation bonds ("bonds") were issued. In 2004, the City spread special assessments across all of the lots in Remington to pay for the bonds issued, including Plaintiffs' lot. Plaintiffs have paid special assessments levied by the City. The special assessments have not been reduced. (*Id.* at 11-12.)

Sometime later, the bonds were refinanced and the City has allegedly reaped savings of more than $60 million as of December 2017 due to interest savings. (*Id.* at 11.) Plaintiffs allege that this resulted in the misappropriation of their tax payments and that the City should have refunded the tax payments by reassessing the special assessments levied against their property. Plaintiffs have brought this action on behalf of themselves and all other landowners who are paying "excess special assessments levied under K.S.A. 12-6a01 et seq. and/or other" statutes and ordinances. (*Id.* at 34.) Plaintiffs seek a declaratory judgment that Defendants have "fraudulently, intentionally and willfully misappropriated the millions of dollars of 'saved' tax payments gained from the refinancing of general obligation and special obligation bonds." (*Id.* at 36.) Plaintiffs further seek judgment in an amount equal to the special assessments paid and an order requiring

2

Defendant Linda Kizzire, the Sedgwick County Treasurer, "to remit all excess special assessment funds collected." (*Id.* at 38.)

Defendants have all moved to dismiss on various grounds (Docs. 27, 29, 31, 34.) Plaintiffs have moved to remand this action to state court on the basis that it is not ripe for federal review (Doc. 39.) On October 17, 2018, this court entered an order to show cause as to why this matter should not be remanded to state court under the TIA or the principle of comity. (Doc. 42.) Defendant Kizzire and Plaintiffs have no objection to remanding this action for the reasons stated by the court in its show cause order. (Docs. 43, 45.) Defendant Kutak filed a response brief asserting that the TIA or the principle of comity is not applicable as the special assessments levied in this action are not taxes or, alternatively, Plaintiffs do not have an adequate remedy under state law. (Doc. 44.) The remaining Defendants joined in Kutak's response. (Docs. 46, 47, 48, 49.)

**II.     Analysis**

The court has an independent obligation to satisfy itself that jurisdiction is proper. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). The TIA provides that the "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Tenth Circuit has held that section "1341 is a broad prohibition against the use of the equity powers of federal courts involving state tax matters." *Heuser v. San Juan Cty. Bd. of Cty. Comm'rs*, 162 F. App'x 807, 809 (10th Cir. 2006) (citing *Brooks v. Nance*, 801 F.2d 1237, 1239 (10th Cir. 1986)). The TIA "applies to claims seeking declaratory judgments, injunctive relief, and refunds of taxes paid." *Mobil Oil Corp. v. U.S. Dep't of Energy (In re Dep't of Energy Stripper Well Exemption Litig.)*, 739 F. Supp. 1449, 1451 (D. Kan. 1990) (citing *Brooks*, 801 F.2d at 1239 and *Cities Serv. Gas Co. v. Okla. Tax Comm'n*, 656 F.2d 584, 586 (10th Cir.),

3

*cert. denied*, 454 U.S. 1124 (1981)). Moreover, the "principle of comity prohibits federal district courts from exercising jurisdiction over § 1983 damage claims where the taxpayer has a plain, adequate, and complete remedy in state court to correct any violations of their federal rights." *Heuser,* 162 F. App'x at 809 (citing *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981)).

### A. Tax

The "TIA is to be read as a 'broad jurisdictional barrier' and is 'first and foremost a vehicle to limit dramatically federal district court jurisdiction.'" *Hill v. Kemp*, 478 F.3d 1236, 1246 (10th Cir. 2007) (quoting *Arkansas v. Farm Credit Servs. of Centr. Ark.*, 520 U.S. 821, 825 (1997)). The TIA, or the related principle of comity, is applicable when the challenged action concerns the "assessment, levy or collection of any tax under State law." 28 U.S.C. § 1341. The label that Kansas provides to the assessment does not resolve "the question whether or not it is a tax…. But that does not mean that the phrase 'under State law' is surplusage either." *Hill*, 478 F.3d at 1247.

The Tenth Circuit has held that the critical inquiry on whether an assessment is a tax under the TIA "focuses on the purpose of the assessment and the ultimate use of funds." *Id.* at 1245 (citing *Marcus v. Kan., Dept. of Rev.*, 170 F.3d 1305, 1312 (10th Cir. 1999)). In determining whether it is a tax, the Tenth Circuit has identified the following characteristics of state taxes:

> [T]he classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to help defray an agency's regulatory expenses.

*Id.* (quoting *Marcus*, 170 F.3d at 1311).

Kutak asserts that the special assessments levied against Plaintiffs' property are not taxes because they were imposed on specific property in consideration of a benefit to that property, they

4

were paid to a separate fund to pay those costs, the purpose is not revenue-raising, and the public at large does not benefit from the improvement. (Doc. 44 at 6.) Kutak argues that the assessments are akin to contracts for work completed.

Although the Tenth Circuit has yet to address this issue, several courts have concluded that special assessments for improvements, such as sewer and water, are taxes under the TIA. *See, e.g., Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir. 1991) ("Special assessments are taxes for purposes of § 1341."); *Tramel v. Schrader*, 505 F.2d 1310, 1315–16 (5th Cir. 1975); *Williams v. City of Dothan, Ala.*, 745 F.2d 1406, 1411 (11th Cir. 1984). The special assessments at issue in this case are also referred to as taxes in one of the statutes at issue: "The assessments, with accrued interest, shall be levied as a **special tax** upon the property included therein concurrent with general property taxes, and shall be payable in not more than 20 equal annual installments, as the governing body determines." K.S.A. § 12-6a10 (emphasis supplied). Moreover, the Kansas Supreme Court has held that a "special assessment is **in the nature of a tax levied upon property** according to the benefits conferred on the property." *Davies v. City of Lawrence*, 218 Kan. 551, 557, 545 P.2d 1115, 1120 (1976) (emphasis supplied).

In addition to the prevailing authority treating special assessments for improvements as taxes under the TIA and Kansas law, the factors cited by the Tenth Circuit also support such a finding. A tax is more likely to be imposed by a municipality instead of an agency. *Hill*, 478 F.3d at 1245. In this instance, the assessment was imposed by the City and is billed at the same time as the general property taxes, which supports a finding that it is a tax. A tax also benefits the public, while a fee is to defray agency's regulatory expenses. *Id.* Kutak argues that the improvements do not benefit the public because it is only for the benefit of the specific parcels of land. Kutak, however, does not cite any authority for the proposition that paving and sewer work for a particular

5

area of town only benefits those landowners. While Plaintiffs have certainly benefitted by the improvements and their land has value due to the same, the public is also generally benefitted to some degree by the paving of roads and development of land in Remington.

Finally, Kutak argues that the assessments are not to raise revenue but instead are payment for work done. (Doc. 44 at 6.) Kutak cites to *Brown Bark I, L.P. v. Traverse City Light & Power Dept.*, 736 F. Supp. 2d 1099 (W.D. Mich. 2010), *aff'd*, 499 F. App'x. 467 (6th Cir. 2012) in support of its position that special assessments are akin to a contractual agreement. In *Brown Bark*, a condominium property owners' association contracted with the defendant, Traverse City Light & Power, to construct and install street-lighting on "the private streets and areas within Brewery Creek." *Id.* at 1101. Liens were to be placed on the condominiums in the event that there was a default on the payments. *Id.* The court held that the charges for the lighting were not taxes under the TIA. The court emphasized that the charges were incurred "by virtue of a voluntary contract" and not "for the purpose of supporting some public-improvement project mandated by Traverse City." *Id.* at 1112-13.

The special assessments at issue here were not charged pursuant to the terms of a contract. Rather, they were assessed in accordance with Kansas statutes. Moreover, they were assessed to support public improvements to the property at issue. The court does not find *Brown Bark* persuasive in light of the key differences between a contractual agreement and Kansas's statutory framework for special assessments. Kutak further argues that the special assessments in this case, and presumably all special assessments levied against property in the city, are not taxes because they are voluntary agreements and Plaintiffs did not have to purchase the property if Plaintiffs did not want to pay those special assessments. (Doc. 44 at 9.) The Tenth Circuit, however, has not been persuaded by such an argument:

> [P]rivate citizens routinely incur different levels of compulsory taxation based on the voluntary choices they make. Thus, for example, in addition to the normal taxes one pays when purchasing a new car, a higher 'luxury' tax may be incurred by those buyers who choose a particularly expensive vehicle. *See, e.g.*, 26 U.S.C. § 4001(a) (1991). Those who incur this luxury tax do so 'voluntarily' in the same sense that those who purchase specialty license plates bearing some preferred message do so 'voluntarily.' That is, just as the Cadillac owner who chooses a fancier car foresees that he or she will also have to pay an additional (compulsory) assessment to the state, a motor vehicle owner who chooses to display a specialty plate in Oklahoma knows that he or she must pay the sovereign an additional (compulsory) sum for that privilege. The fact that the transaction in either case is voluntarily undertaken with full foresight of the inevitable (and most certainly not bargained for or voluntarily chosen) assessment makes the assessment involved no less a tax. Indeed, though our car-oriented culture may make it sometimes seem otherwise, the very decision to purchase and drive a car is itself a voluntary one (no one is forced to have a car, after all) and it, too, foreseeably involves the payment of a sales tax and a tax for even a basic license plate. So it is that a very great many taxes we are every day compelled to pay are a result of our voluntary decisions (the decision to work harder this year and perhaps risk a higher income tax bracket, the decision to purchase a home rather than rent and thus incur real estate taxes, etc.).

*Hill*, 478 F.3d at 1253.

The court finds that the special assessments are taxes under the TIA. *See, e.g., Burris*, 941 F.2d at 720. Kutak contends that even if the assessments are taxes, Plaintiffs are not seeking to enjoin those taxes and, therefore, the TIA is inapplicable. (Doc. 44 at 10.) Plaintiffs' complaint seeks a refund of special assessments paid on behalf of themselves and a class of property owners. The TIA "applies to claims seeking declaratory judgments, injunctive relief, and refunds of taxes paid." *Mobil Oil Corp.*, 739 F. Supp. at 1451. The principle of comity also prohibits this court from "exercising jurisdiction over § 1983 damage claims where the taxpayer has a plain, adequate, and complete remedy in state court to correct any violations of their federal rights." *Heuser*, 162 F. App'x at 809. Therefore, as long as Plaintiffs have an adequate remedy in state court, this action must be remanded.

### B. Remedy

Plaintiffs contend that Kansas state court provides an adequate remedy for their claims. (Docs. 45, 50.). Kutak, however, argues that Plaintiffs do not have an adequate remedy. Kutak cites to *Zipperer v. City of Ft. Myers*, 41 F.3d 619 (11th Cir. 1995), in support of its position. *Zipperer*, however, is clearly distinguishable. The Eleventh Circuit held that the TIA did not apply because there was no state remedy to taxpayers "challenging special assessments" under **Florida** law. *Id.* at 622. Kansas provides a remedy for individuals challenging tax assessments. *See Lamar Co., LLC v. Unified Gov't of Wyandotte Cty./Kansas City, Kan.*, 306 F. Supp. 2d 1139, 1154 (D. Kan. 2004); *Dutoit v. Bd. of Cty. Comm'rs of Johnson Cty.,* 233 Kan. 995, 1006, 667 P.2d 879, 890 (1983) (Plaintiffs can bring section 1983 claim challenging assessments in state court).

Therefore, because this is an action for a refund of tax payments, and because Plaintiffs have a plain, speedy, and efficient, remedy in Kansas courts, this action must be remanded to state court under the TIA and the principle of comity.

### III. Conclusion

Plaintiffs' motion to remand (Doc. 39) is GRANTED for the reasons stated in this order. This action is REMANDED to Sedgwick County District Court.

Defendants' pending motions to dismiss (Docs. 5, 27, 29, 31, 32, 34) are DENIED AS MOOT.

IT IS SO ORDERED this 15th day of November, 2018.

                                                  ___s/ John W. Broomes_____
                                                  JOHN W. BROOMES
                                                  UNITED STATES DISTRICT JUDGE